Mashek Engineering Co., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 7449.   Promulgated March 23, 1928.

*John G. Jaeger, Esq.*, and *A. H. Jarman, Esq.*, for the petitioner.
*J. Arthur Adams, Esq.*, for the respondent.

174

OPINION.

MURDOCK: The petitioner has advanced two contentions: (1) That within the provisions of section 200 of the Revenue Act of 1918 it should be classified as a personal service corporation, or (2) that if it is not classified as a personal service corporation then it should be allowed a valuation of two patents for the purpose of invested capital and a deduction of $2,941.17 for exhaustion of the two patents in each of the taxable years.

In our findings of fact we have described at some length the general practice of the petitioner in carrying on its business since the time of its organization. However, it does not appear that all of these facts apply to the taxable years in question.

In order to be classified as a personal service corporation under the above Act, the petitioner must meet the three requirements set forth in section 200, namely: (1) the principal stockholders must be regularly engaged in the active conduct of the business, (2) the income must be attributable primarily to their activities, and (3) capital must not be a material income-producing factor.

When we come to consider the first requirement we are met with the fact that the corporation's books at the beginning of the first taxable year show that 175 shares of its stock out of a total of 359½ outstanding shares were in the names of persons not regularly engaged in the active conduct of the business of the corporation. Seventy-five shares were held by James H. Cullen, Jr., who during the taxable years had no business connection with the petitioner save his stockholding. Mashek, the majority stockholder, purchased Cullen's 75 shares during the year 1920, but the evidence does not show the date of this purchase.

Mashek's wife and daughter each having 50 shares of the stock were not at all engaged in the active conduct of the business. These shares had been endorsed in blank by the owners thereof and were kept in Mashek's safe deposit vault under a " family arrangement," which was not explained. We have heretofore held that the endorsement in blank and delivery of certificates by a wife to her husband

is not sufficient to vest title thereto in the latter in the absence of evidence showing that there was an intent to pass title. *C. F. Medaris Co.*, 10 B. T. A. 460. In respect to these shares the petitioner has not produced evidence to show that the title thereto has passed to the majority stockholder from his wife and daughter.

Where three stockholders who are not regularly engaged in the active conduct of the petitioner's business, and whose activities do not contribute to its income, hold such a large percentage of the outstanding stock, two of the requirements of the Act are not met and the petitioner can not be classified as a personal service corporation. See *Matteson Co.* v. *Willcuts*, 12 Fed. (2d) 447, in which case the opinion was in part as follows:

Any corporation claiming to be a personal service corporation must bring itself fairly within the requirements of such an organization, as provided by law. Every corporation has full control of its own activities. It knows what the requirements of a personal service corporation are. It may comply therewith and easily keep within the limits thereof if it so choose, or it may not if it otherwise prefers. If it does not fairly observe and keep within the requirements of the law, it should not claim the benefits which the law confers. To nearly comply with the law, or to come within hailing distance thereof, is not enough.

\* \* \* It is necessary, not only that the income of the corporation shall be derived from personal service, but also that it shall be derived primarily from the activities of those who principally are to share in that income, and therefore in the benefits of the law. If this were not so, the personal service in such cases might be rendered by one or two, or a few only, and others largely interested in the corporation, but rendering no service, might be capitalizing the efforts of these few and realizing a profit therefrom.

The petitioner has also failed to prove its contention in regard to invested capital and exhaustion. The Revenue Act of 1918 contains the following provision in respect to invested capital:

Sec. 326 (a) That as used in this title the term "invested capital" for any year means (except as provided in subdivisions (b) and (c) of this section):

\* \* \* \* \* \* \*

(4) Intangible property bona fide paid in for stock or shares prior to March 3, 1917, in an amount not exceeding (a) the actual cash value of such property at the time paid in, (b) the par value of the stock or shares issued therefor, or (c) in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding on March 3, 1917, whichever is lowest.

No satisfactory evidence was presented as to any of the three measures of value set forth in this section, and in the absence of such evidence no valuation for invested capital purposes can be allowed. *Leggett & Platt Spring Bed Manufacturing Co.*, 8 B. T. A. 61.

The sole evidence to show the March 1, 1913, value of the two patents in question for the purpose of exhaustion was contained in the deposition of a consulting engineer. At the time the deposition was taken the respondent objected to the competency of the witness'

opinion as to the March 1, 1913, value, one of the reasons given for the objection being that the witness had not shown himself to be qualified to testify as to value. This deposition was offered in evidence at the trial of the case before the Board and was accepted subject to the objections raised at the time the deposition was taken, with the understanding that the Board should reserve its ruling on the objections until the case was taken up for a decision. We doubt seriously whether it has been shown that this witness was qualified to give an opinion as to the March 1, 1913, value of the patents and even if the objection to his testimony be overruled we think that little or no weight can be attached to his opinion. The witness in qualifying himself stated that he had been a consulting engineer for various iron and steel companies, a by-product coke oven company, smelting and refining companies, a coal and iron company and some other industrial concerns. He stated that he was familiar with the two patents and had seen three plants equipped with machinery covered by the patents and the product of a plant so equipped. He then gave it as his opinion that the fair valuation of these two patents as of March 1, 1913, was $50,000.

The evidence in this case shows that the designing of briquetting plants and equipment requires a high degree of technical knowledge, skill and experience, and the petition alleged that "as consultant engineer in this field [designing and constructing briquetting plants], special technical training experience and expert knowledge are necessary and essential." The witness has undoubtedly qualified as a consulting engineer of experience and his opinion as to values of plant equipment, or product of those businesses with which he was familiar by experience would undoubtedly be acceptable but for the purposes of this particular case the witness has not shown that he has such a familiarity with the briquetting business, or that he has been informed sufficiently in regard thereto to give an intelligent and reliable opinion as to the value on March 1, 1913, of the two patents in question.

The respondent offered in evidence the petitioner's corporation excise and income-tax returns from the year 1909 to the year 1922, which showed that for a period of five years from its incorporation up to and including the year 1913 its losses far exceeded any profits realized.

It also appeared from the evidence that in designing briquetting machinery and plants the two patents in question were used in some cases and in others were not used. These facts would seem to indicate also that the patents had no such March 1, 1913, value as the petitioner would claim for them but in fact that they had little value if any at all.

*Judgment will be entered for the respondent.*